## IN THE CIRCUIT COURT OF MINERAL COUNTY, WEST VIRGINIA

JOHN N. TEETS AND
DEBRA TEETS

      Plaintiffs,

v.

MINE SAFETY APPLIANCES COMPANY, LLC;
AMERICAN OPTICAL CORPORATION;
CABOT CSC LLC F/K/A CABOT SAFETY
CORPORATION;
AEARO TECHNOLOGIES LLC;
MOLDEX-METRIC, INC.;
GARRETT MINE SUPPLY, INC.;
UNITED CENTRAL INDUSTRIAL SUPPLY
COMPANY, L.L.C.;
CENTRAL SUPPLY, INC.; AND
JOHN DOES 1-10

      Defendants.

CIVIL ACTION NO:

19C59

FILED
CLERK CIRCUIT COURT
OCT-10-2019
MINERAL COUNTY
KEYSER, WV

## COMPLAINT

COME the Plaintiffs, John N. Teets and Debra Teets, by counsel, and for their cause of action against the above-named Defendants, jointly and severally, state as follows:

### I. INTRODUCTION

1. This lawsuit is filed on behalf of John N. Teets (hereinafter "Plaintiff"), who worked as a coal miner within West Virginia, Virginia, and some in Maryland and was exposed to substantial amounts of harmful dust because the respirators he used failed to protect him. The respirators were manufactured and sold by Defendants. As a result, Plaintiff developed complicated coal worker's pneumoconiosis. Plaintiff, Debra Teets (hereinafter "Mrs. Teets") is asserting a loss of consortium claim herein.

### II. PARTIES

2. Plaintiffs, John N. Teets and Debra Teets are residents of the State of Virginia that live in Richlands, Virginia. Plaintiff learned that the respirators he wore were defective and a contributing cause to his complicated CWP within the last few months before filing this complaint.

3. Debra Teets is the wife of Plaintiff and asserts a loss of consortium claim herein.

**EXHIBIT A**

4. Defendant, **Mine Safety Appliances Company, LLC** ("MSA") is a corporation duly organized and existing under the laws of the State of Pennsylvania with its principal place of business at 1000 Cranberry Woods Drive, Cranberry Township, Pennsylvania 16066. MSA has and continues to do business in West Virginia. The agent for service of process for Mine Safety Appliances Company is CT Corporation System, 1627 Quarrier St, Charleston, West Virginia 25311-2124.

5. Defendant **American Optical Corporation.** ("AO") is a foreign corporation with its principal place of business in Massachusetts. AO did business in West Virginia. AO may be served with process by serving Jeffrey A. Healey, Tucker Ellis, LLP, 950 Main Avenue, Suite 1100, Cleveland, Ohio 44113.

6. Defendant **Cabot CSC LLC F/K/A Cabot Safety Corporation** ("Cabot") is a foreign corporation located in Delaware. Cabot did business in West Virginia. Cabot may be served with process by serving its registered agent The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

7. Defendant **Aearo Technologies LLC** ("Aearo") is a foreign corporation whose current principal place of business is Minnesota. Aearo has and continues to do business in West Virginia. Aearo may be served with process by serving its registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

8. Defendant **Moldex-Metric, Inc.** ("Moldex") is a foreign corporation with its principal place of business in California. Moldex has and continues to do business in West Virginia. The agent for service of process of Moldex-Metric is James E. Hornstein, 10111 West Jefferson Boulevard, Culver City, California 90232.

9. Defendant **Garrett Mine Supply, Inc.** ("Garrett Mine") is a foreign corporation with its principal place of business in Maryland. Garrett Mine has and continues to do business in West Virginia. Garret Mine may be served with process by serving its registered agent Ronald W. Petrella, P.O. Box 2446, 32 Enterprise Drive, Mt. Lake Park, Maryland 21550.

10. Defendant **United Central Industrial Supply Company, L.L.C.** ("United Central") is a foreign corporation with its principal place of business in Tennessee. United Central has and continues to do business in West Virginia. United Central may be served with process by serving its registered agent CT Corporation System, 4701 Cox Road, Ste 285, Glen Allen, Virginia 23060.

11. Defendant **Central Supply, Inc.** ("Central Supply") is a foreign corporation with its principal place of business in Virginia. Central Supply has and continues to do business in West Virginia. Central Supply may be served with process by serving its registered agent Johnny R. Bapties, 21 Vanderpool Lane, Cumberland, Virginia 23040.

12. Defendants, John Does 1-10 are corporations, companies, persons, and/or other legal entities whose identity is unknown to Plaintiffs at this time. All allegations in this complaint

**EXHIBIT A**

are pled specifically against the John Doe Defendants. Upon identification of any John Doe Defendant, the Plaintiffs will move to substitute the discovered party in for a John Doe.

### III. JURISDICTION

13. Plaintiffs' claims are brought solely under West Virginia law and Plaintiffs state that they do not bring any claims and disclaim any and all claims under federal laws, statutes or regulations.

14. The damages sustained by the Plaintiffs are in excess of the minimum jurisdictional limits of this Court.

15. Defendants are all corporations or other business entities which have been and/or are now manufacturing, selling, distributing, supplying, or otherwise placing in the stream of commerce respirators, dust masks, or other respiratory protection; this Court has personal jurisdiction over all out of state Defendants under W. Va. Code §56-6-33 (Long Arm Statute) and W. Va. Code §31-1-15 as these Defendants have transacted business in this State and supplied their products and committed a tort within the State of West Virginia.

### IV. VENUE

16. The Court has venue of this action in that the Plaintiff used respirators manufactured, sold, distributed and/or supplied by the Defendants in Mineral County, West Virginia and surrounding areas, and sustained injury as a result thereof.

### V. FACTS

17. Plaintiff, worked as a coal miner from approximately 1974 to 2014 at the following locations and positions (the dates of employment are approximate if known):

    a. Mastellar Coal (Mineral County, WV and Garrett County, MD) – 1974 to 1988 – laborer on miner, roof bolter, foreman
    b. Island Creek (Grant County, WV) – 1988 to 1995 – section foreman and longwall foreman
    c. Consol Energy (Buchanan County, VA) – 1995 to 2014 – section foreman

18. During the course of his mining career, Plaintiff used respirators manufactured and sold by Defendants for protection against harmful dust. Plaintiff used Defendants' respirators in their intended manner.

19. Defendants, Mine Safety Appliances, LLC (MSA), American Optical Corporation (AO), Cabot CSC LLC (Cabot), Aearo Technologies LLC (Aearo), and Moldex-Metric, Inc. (Moldex) manufactured, distributed, supplied, and sold the respirators used by Plaintiff. Plaintiff used the MSA Dustfoe 66; AO 2090; Cabot AO Safety Unistar R20N95; Aearo AO Safety Unistar

3

**EXHIBIT A**

R20N95; and Moldex 2200. Garrett Mine, United Central, and Central Supply sold the Defendants' respirators to Plaintiff's employers, who, in turn, provided them to Plaintiff for use in the mines.

20. The respirators used by Plaintiff and manufactured, sold, and distributed by the Defendants were subjected to normal use and remained, in all material respects, in the same condition as at the time of sale.

21. The Defendants' respirators used by Plaintiff leaked substantial amounts of harmful dust into his breathing zone. The defects causing the leakage were hidden, and the dust leaking through the Defendants' respirators was so small (submicron in size), it was undetectable by the human senses including Plaintiff's. Thus, Plaintiff was not aware of the harmful dust leaking through Defendants' respirators nor of the causal connection between his respirators and his disease; rather, he believed that the Defendants' respirators were protecting his lungs from the harmful dust in the mines. Plaintiff only discovered that the respirators he used may have been a cause of his disease within two years of filing this Complaint.

22. MSA manufactured, sold, marketed, and distributed the MSA Dustfoe 66 representing that it was a federally certified mask when, in fact, it did not meet the federal certification requirements. Under the National Institute of Occupational Health ("NIOSH") certification regulations, MSA was obligated to obtain and/or cause to be maintained its certification in accordance with the drawings and specifications upon which its certificate of approval was based. *See*, 30 C.F.R. § 11.33 (f) (1972-1998). The evidence will show that MSA failed to meet its certification requirements for the MSA in one, or more, of the following particulars:

    a. From at least 1974 to 2014, MSA manufactured, sold, marketed, and distributed the MSA Dustfoe 66 representing that the mask was approved and certified by the U.S. Bureau of Mines under Schedule 21B. Under federal NIOSH approval regulations, the NIOSH approval for this version of the Dustfoe 66 expired on March 31, 1976. *See*, 30 C.F.R. 11.2 (b) (1972-1998). Despite this expiration, MSA continued to manufacture, sell, market, and distribute the 21B version of the Dustfoe 66, holding it out as an approved mask by the United States Bureau of Mines after March 31, 1976. MSA continued to follow the engineering drawings for the 21B Dustfoe even after expiration of the certification of this mask on March 31, 1976. MSA continued to follow drawing "B995860" for the packaging of the Dustfoe 66 which stated the following: "This respirator manufactured in accordance with U.S. Bureau of Mines, Schedule 21B." This packaging revealed that the 21B Dustfoe 66 continued to be sold and manufactured by MSA for many decades after its certification expired. Accordingly, the statement reflected on the MSA packaging that the respirator was certified by the U.S. Bureau of Mines under 21B was false and misleading, in the following particulars: (1) the 21B certification expired on March 31, 1976, and (2) the U.S. Bureau of Mines was not responsible for approval of respirators after 1972. These misrepresentations by MSA constituted a mischaracterization of the qualities and performance

4

**EXHIBIT A**

characteristics of the Dustfoe 66 leading consumers to believe that the respirator was approved for use in mines when, in fact, it was not.

b. The MSA Dustfoe also received a NIOSH certification for a respirator, identified as a 21C respirator, with replaceable filters designed against dusts having an air contamination level not less than .05 milligram per cubic meter of air, including but not limited to coal. See, 30 C.F.R. §11.130 (a) (1972-1998). Under subpart K of this regulation, a respirator, in its final manufactured configuration, was to be tested in order to meet the requirements of the federal silica dust test as specified by 30 C.F.R. §§ 11.140-4; 11.140-9 and 11.140-10 (1972-1998). This required MSA to test the final configuration of the respirator against these regulatory requirements to obtain approval and certification. MSA was also required to manufacture this approved mask in the same configuration as the masks that were submitted and tested by NIOSH. MSA quality control records do not reflect that, over a twenty-two year period (1976-1998), the MSA Dustfoe 66 was ever tested in its final configuration against the requirements of subpart K. Alternatively, if the mask was tested, the sample of testing was so small that MSA would be unable to determine if the Dustfoe 66 was, in fact, in compliance with 30 C.F.R. part 11, Subpart K. Accordingly, MSA held the mask out to be one that was approved and certified even though their own quality control program failed to perform the proper testing to assure that the Dustfoe 66 was performing in accordance with the specifications upon which the NIOSH certificate of approval was based.

23. As a consequence of the above enumerated conduct, the MSA Dustfoe 66 was unable to provide effective respiratory protection because these masks did not meet the minimum performance requirements prescribed by NIOSH. Additionally, the evidence will show that the respirators were improperly designed including, but not limited to, the following particulars:

a. In designing and manufacturing a respirator which failed to allow the user to perform a proper fit test and/or fit check on the respirator as prescribed by the American National Standards Institute (ANSI) Standard for Respiratory Protection as prescribed by ANSI Z88.2;

b. In designing and manufacturing filter material for the Dustfoe 66 which lost the ability to provide effective filtration when exposed to environments of high humidity, like a coal mine;

c. In designing and manufacturing a face piece for the Dustfoe 66 which allowed for leakage between the face cushion and the metal respirator body;

d. In designing and manufacturing exhalation valves for the Dustfoe 66 which would allow back leakage;

e. In designing and manufacturing exhalation valves for the Dustfoe 66 which did not provide for protection of the exhalation valves from normal wear and tear.

5

**EXHIBIT A**

24. Plaintiff has developed complicated coal worker's pneumoconiosis. His lung disease was caused by the hidden defects in and the inadequate warnings provided with the Defendants' respirators.

## VI. CAUSES OF ACTION

### COUNT ONE – STRICT LIABILITY CLAIM AGAINST DEFENDANTS

25. Plaintiff adopts by reference the allegations contained and set forth above.

26. West Virginia law provides that manufacturers (MSA, AO, Cabot, Aearo, and Moldex) and distributors (Garrett Mine, United Central, and Central Supply) be held strictly liable when they place into the stream of commerce a product that is not reasonably safe for its intended use, and the unsafe product is a cause of harm to the Plaintiff.

27. Defendants are strictly liable in tort to the Plaintiff because they sold and distributed defective products; namely, the Defendants' respirators used by Plaintiff. Plaintiff will prove that the Defendants' respirators were not reasonably safe for their intended and foreseeable use for one or more of the following reasons:

    a. When used in coal mining conditions, the respirators leaked substantial amounts of harmful dust into the breathing zone of the Plaintiff, including through the filter of the respirators and around the face seal of the respirators;

    b. The defect in the respirators causing the leakage was not detectable by Plaintiff and was not obvious in nature;

    c. The harmful dust leaking through the respirators and into Plaintiff's breathing zone was not detectable by the human senses because it was too small in size and is odorless;

    d. Defendants failed to provide any type of warning of the hidden leakage problem;

    e. A reasonably prudent manufacturer would not have manufactured, sold and distributed respirators with this hidden defect and with inadequate warnings in the relevant time frame. This is particularly true because a respirator is a safety product on which miners rely to protect themselves and their health;

    f. Defendants, and other respirator manufacturers sold, in the relevant time frame, other types of dust respirators that did not substantially leak harmful dust when used in coal mining operations;

6

**EXHIBIT A**

g. At all material times, Plaintiff used Defendants' respirators in their intended manner.

28. The MSA Dustfoe 66 was unreasonably dangerous in the following non-exclusive manners: the exhalation valves were defective; the mask would not properly seal to the face; it was difficult or impossible to perform a proper fit check; they were designed to leak; the filters were defective in that humidity caused them to lose their electrostatic charge; the two-point strap system was defective; MSA failed to properly test their respirators under the NIOSH approval process; and other defective designs to be proven throughout the litigation of this case. Due to the defective nature of the MSA respirators the Plaintiff was unknowingly exposed to harmful dust resulting in him being diagnosed with complicated coal worker's pneumoconiosis.

29. The AO, Cabot, and Aearo 2090 type respirators were unreasonably dangerous in the following non-exclusive manners: would not adequately seal to face; the two-point strap system was defective; would not properly filter deadly dusts; filters would lose efficiency in high humidity conditions; and other defective designs to be proven through the litigation of this case. Due to the defective nature of the 2090 type respirators the Plaintiff was unknowingly exposed to harmful dust resulting in him being diagnosed with complicated coal worker's pneumoconiosis.

30. Moldex-Metric, Inc. manufactured, marketed, and sold the 2200 respirator from the early 1980's until the present. Moldex knew of many design defects in the 2200 including, but not limited to: lack of exhalation and inhalation valves; lack of foam face seal; lack of adjustable straps; inability to perform a fit test until some after 1982; inability to perform a fit check/user seal check; inability to obtain a proper face seal; leaks through staple holes; filter media was defective; failure to comply with NIOSH testing standards; undetectable faceseal leakage; and other ways to be proven through the litigation of this case. The defects, including manufacturing defects, present in the 2200 resulted in Plaintiff being unknowingly exposed to occupational dust and causing his complicated coal worker's pneumoconiosis

31. Based on the foregoing, the Defendants have breached the implied warranty of fitness because the respirators they placed into the stream of commerce were defective and not reasonably suitable, safe, or fit for the purposes for which they were sold. Implicit in the respirators' presence on the market was the representation by the manufacturers and sellers that the respirators would safely perform the functions for which they were constructed. (Breach of Implied Warranty Claim).

32. As a direct and proximate result of the defective and unsafe respirators manufactured, distributed and sold by Defendants, Plaintiff has suffered serious bodily harm and/or damages.

## COUNT TWO – NEGLIGENCE CLAIM AGAINST DEFENDANTS

33. Plaintiff adopts by reference the allegations contained and set forth above.

7

34. Defendants are liable to the Plaintiff for negligence in one or more of the nonexclusive respects, which negligence was a direct and proximate cause of the harm and injuries suffered by the Plaintiff.

35. Despite Defendants' actual or constructive knowledge that the respirators posed an unreasonable risk of harm, Defendants:

    a.  failed to provide adequate warning and/or instruction with regard to the respirators;

    b.  failed to provide proper fitting instructions;

    c.  either ignored the results of filtering and quality control tests performed they performed, or failed to perform adequate filtering tests on said respirators before they were placed in the stream of commerce;

    d.  failed to properly design their respirators;

    e.  failed to adequately monitor and/or test or prescribe monitoring and/or tests for persons who handled or worked with its respirators;

    f.  failed to accompany their respirators with adequate warnings of their dangerous propensities;

    g.  knew, or with the exercise of reasonable care, should have known that the respirators contained a filter which was not adequate to repel silica dust or prevent Plaintiff from breathing silica dust;

    h.  failed to implement or enforce a valid quality control program to insure that the respirators were manufactured in compliance with federal certification regulations; and

    i.  failed to manufacture a respirator which complied with federal certification regulations causing the respirator to have defects resulting in failure to a degree that the respirator does not provide any respiratory protection and that the defect reduced protection and is not detectable by the user.

36. Defendants knew or should have known that the respirators used by Plaintiff would not effectively protect coal miners, such as the Plaintiff, from inhalation of harmful dust particles. Specifically, based on their own testing and information and testing performed by others, Defendants knew or should have known that the filter and the respirator face seal would leak substantial amounts of harmful dust when used in coal mining operations. Defendants should have corrected the leakage problem or prohibited the use of these respirators in coal mining operations.

8

**EXHIBIT A**

37. Defendants should have warned of the hidden dangers and limitations in the respirators when used in coal mines. Defendants were negligent in failing to do so.

38. Defendants knew or should have known that despite the defects described above, the respirators could meet the minimal governmental approval standards. Further, Defendants knew or should have known, that the respirators used by Plaintiff could pass the minimal government approval test yet still fail to provide adequate respiratory protection to the user. Defendant concealed and failed to disclose to the public at large, and the purchasers and users of their respirators, the fact that government approval did not mean that the respirators protected the worker in the field. Instead, Defendants engaged in using the governmental approval as a cover for selling respirators which they knew, or should have known, were defective and ineffective.

39. The acts and omissions of Defendants described above constitute negligence in that there has been a failure to utilize reasonable care under the circumstances. As a direct and proximate result of the negligence of Defendants as set forth above, the Plaintiff has sustained bodily harm and/or damages.

### COUNT THREE – NEGLIGENCE *PER SE* (MSA, AO, CABOT, AEARO, MOLDEX)

40. Plaintiff adopts by reference the allegations contained and set forth above.

41. Plaintiff would also plead negligence *per se* and show that the Defendants MSA, AO, Cabot, and Aearo violated the following provisions of federal law and federal regulations: (1) 30 U.S.C. § 820 (f) & (h) by falsely representing that the MSA Dustfoe 66 and the 2090 type respirators were in compliance with federal certification regulations when the respirators failed to comply with these regulations; and (2) 30 C.F.R. part 11, including sections 11.140-10. Plaintiff would further show that these laws and regulations were intended to protect the class of persons working in mining and/or silica dust producing operations and that Plaintiff is within this class of persons. Accordingly, Defendants are liable under the doctrine of negligence *per se*.

42. Plaintiff would also plead negligence *per se* and show that the Defendant Moldex violated the following provisions of federal law and federal regulations: 1) 30 U.S.C. § 820 (f) & (h) by falsely representing the Moldex 2200 was in compliance with federal certification regulations when the respirator failed to comply with these regulations, 2) 30 C.F.R. part 11, including sections 11.33, 11.40, 11.41, 11.42, 11.43, 11.140-4, 11.140-5 and 11.140-9. Plaintiff would further show that these laws and regulations were intended to protect the class of persons working in mining and/or silica dust producing operations and that Plaintiff is within this class of persons. Accordingly, Defendant is liable under the doctrine of negligence *per se*.

### COUNT FOUR -- FRAUD AGAINST MSA

43. Plaintiff adopts by reference the allegation contained and set forth above.

44. As a consequence of the conduct which has been pled, with particularity, the

9

Defendant MSA is guilty of fraud. MSA sold the Dustfoe 66 representing it was a mask that was government approved, when, in fact, this mask did not have such an approval. The Dustfoe 66 did not have such an approval because: (1) this respirator was sold as a 21B "Bureau of Mines" approved respirator when, in fact, 21B certification expired on March 31, 1976, or (2) this mask was sold as a "NIOSH" approved respirator when, in fact, MSA failed to perform the silica dust test on the final configuration of the mask to confirm that the Dustfoe 66 performed in a manner that was consistent with its certification. These deficiencies caused MSA to manufacture, market, sell, and distribute a respirator representing that the mask had qualities and performance characteristics relating to its status as a federally approved respirator, when, in fact, it was not a federally approved respirator. The evidence will show that MSA's representations relating to the Dustfoe 66 status as a federally approved respirator were false statements.

45. MSA's false statements which held out that the Dustfoe 66 was an approved respirator when, in fact, it was not were material misrepresentations. MSA's misleading statements that the Dustfoe 66 satisfied federal approval regulations were material representations because, under the Mine Safety and Health Act, coal mining employers were only permitted to purchase NIOSH approved respirators for use in the mines. *See* 30 C.F.R. § 72.700 (1972-1998) (requiring only NIOSH approved respirators to be used in a mine). Accordingly, MSA's misrepresentations regarding the federal certification and approval of the Dustfoe 66 were materially misleading to coal mine employers and employees.

46. The evidence will show that MSA's continued practice of selling an expired 21B respirator and/or an untested respirator was made with knowledge of its falsity. Manufacturing records from MSA reveal that MSA engineers approved drawings of the 21B respirator after expiration of the 21B regulation. MSA's quality control plan also illustrates that MSA failed to test the Dustfoe 66, in its final configuration, in accordance with the silica dust test. This evidence demonstrates that MSA had actual knowledge that it was selling an uncertified respirator and falsely representing that the respirator was certified, when in fact, it was not. The internal records from MSA further reveal that by approving the production of an uncertified Dustfoe 66 and placing this product into the stream of commerce, MSA intended to deceive users like Plaintiff that he was using a certified respirator, when he was not.

47. The evidence will further show that, based upon the testimony of safety representatives of the Plaintiff's employers, Plaintiff's employers and the Plaintiff both relied upon the representation that the MSA Dustfoe 66 was certified, when, in fact, it was not. This reliance was based upon the Mine Safety and Health Administration requirement that only certified respirators be used in a mine. Both the Plaintiff and his employers reasonably relied upon the false representation made by MSA that the Dustfoe 66 was a certified respirator. Furthermore, MSA had a duty to disclose that the MSA Dustfoe 66 was not a certified respirator because it affirmatively marketed this respirator to the coal mining industry.

48. MSA is therefore guilty of fraud which proximately caused the Plaintiff's injuries.

**EXHIBIT A**

## COUNT FIVE -- PUNITIVE DAMAGES
## AGAINST MSA, AO, CABOT, AEARO, AND MOLDEX

49. Plaintiff adopts by reference the allegations contained and set forth above.

50. Defendants had actual knowledge that the type of respirators used by Plaintiff substantially leaked harmful, undetectable dust into the breathing zone of the wearer, when used in conditions commonly found in coal mining. Further, Defendants knew that the inhalation of such dust could cause serious, progressive lung disease. Nevertheless, Defendants specifically marketed the respirators as being safe and effective for use by coal miners.

51. Defendants should have warned that the type of respirators worn by Plaintiff were not appropriate for use in coal mining operations. Nothing prevented Defendants from taking such action.

52. Defendants are subject to a punitive damage award because they acted with gross fraud, malice, oppression or wanton, willful or reckless conduct towards the health and safety of the user of their respirators, here the Plaintiff. Further, the Defendants did not recall their respirators at any time nor ever warn of the hidden defects.

53. The suppression of information and misrepresentations by Defendants was motivated by their desire to obtain an unjust economic advantage, including maximizing sales and profits from the sale of the products at the expense of the health of coal miners, including the Plaintiff.

54. The aforesaid actions of Defendants constitute malicious willful and wanton conduct and gross negligence and demonstrate a complete disregard and indifference to the safety of the Plaintiff. As a result, Plaintiff seeks punitive damages against Defendants.

## COUNT SIX -- LOSS OF CONSORTIUM OF DEBRA TEETS

55. Plaintiffs adopt by reference the allegations contained and set forth above.

56. Plaintiff, Debra Teets, is the wife of Plaintiff.

57. As a direct and proximate result of the aforementioned strict liability, negligence, negligence per se, and gross negligence, Mrs. Teets has suffered substantial mental distress and anguish.

58. Further, Mrs. Teets, is entitled to recover damages for the loss of affection, care, society, companionship, and consortium of her husband, Plaintiff.

11

**EXHIBIT A**

## VII. DAMAGES

59. Plaintiffs adopt by reference the allegations contained and set forth above.

60. Plaintiffs have sustained substantial damages as a result of the Defendants' defective products and conduct as described above. His damages include, but are not limited to, severe and permanent injuries; medical, hospital, and other healthcare costs (past, present and future); physical pain and suffering (past, present and future); emotional distress and mental anguish (past, present and future); loss of ability to enjoy life (past, present and future); lost wages, earning capacity and other economic losses (past, present and future); and punitive damages. She has suffered a loss of consortium.

61. Defendants are jointly and severally liable for the damages herein as they are strictly liable for the manufacture and sale of defective products, the respirators used by Plaintiff.

## VIII. PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against the Defendants jointly and severally, as follows:

1. For compensatory damages in an amount that is fair and reasonable as shown by the evidence;

2. For punitive damages against MSA, AO, Cabot, Aearo, and Moldex in an amount that is fair and reasonable as shown by the evidence;

3. For Plaintiffs' costs herein expended;

4. For prejudgment and post judgment interest until paid; and

5. For all further relief to which Plaintiffs are entitled.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Respectfully submitted,

JOHN N. TEETS and wife,
DEBRA TEETS,

12

**EXHIBIT A**

BY COUNSEL

*[signature]*

Victoria Herman, Esq. (WV State Bar ID 12698)
Wolfe Williams & Reynolds
28 Cross Roads Drive
Mount Hope, WV 25880
(304) 461-7774

Of Counsel:

Joseph E. Wolfe, VSB No. 15316
WOLFE WILLIAMS & REYNOLDS
470 Park Avenue
Post Office Box 625
Norton, Virginia 24273
Johnny Givens, MSB No. 101561
GIVENS LAW FIRM, PLLC
240 Trace Colony Park Drive, Ste 100
Ridgeland, Mississippi 39157
Telephone: (601) 300-2009
Facsimile: (800) 291-0847
johnny@givens-law.com

PORTER MALOUF, P.A.
Post Office Box 12768
Jackson, Mississippi 39236
Telephone: (601) 957-1173
Facsimile: (601) 957-7366

13

**EXHIBIT A**